UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEY FAY COURTNEY,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C12-453-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Josey Fay Courtney seeks review of the denial of her Supplemental Security Income application. Ms. Courtney contends the ALJ erred (1) at step two by failing to find all of her mental impairments to be severe impairments; (2) in assessing her residual functional capacity ("RFC"); (3) by discounting her testimony; and (4) at step five by finding there were jobs she could perform. Dkt. 11. As discussed below, the Court recommends that pursuant to sentence four, the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

The procedural history is not at issue and need not be discussed. At issue is the ALJ's decision finding Ms. Courtney not disabled. Utilizing the five-step disability evaluation

REPORT AND RECOMMENDATION - 1

process,[1] the ALJ found:

**Step one**: Ms. Courtney had not worked since May 14, 2009.

**Step two**: Club foot, plantar fasciitis, obesity, learning disorder, post traumatic stress disorder ("PTSD") with elements of anxiety and depression, personality disorder, and polysubstance abuse were severe impairments.

**Step three**: these impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual functional Capacity**: Ms. Courtney could perform sedentary work; she could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; she could stand or walk for 2 hours in an 8 hour day and sit for 6 hours in an 8 hour day; she could not climb ladders, ropes or scaffolds but could occasionally climb ramps or stairs, balance, kneel, stoop, or crawl; she has the mental capacity to understand, remember and carry out simple 1 to 2 step instructions required of jobs at a level of SVP 1 or 2 or unskilled work; she has average or moderate ability to perform sustained work activities (i.e. pace, persistence, attention and concentration) on a regular and continuous basis (i.e. 8 hours a day, 5 days a week); she could make judgments on simple work related decisions and respond appropriately to co-workers, supervisors and deal with changes within the workplace that do not deal with the general public in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing; she could have incidental contact with the public so long as the contact is not part of the work process.

**Step four**: Ms. Courtney has no past relevant work.

**Step five**: There are jobs Ms. Courtney could perform and she is thus not disabled.

Tr. 8-21.

As the Appeals Council denied Ms. Courtney's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## DISCUSSION

**A.     The ALJ's step two findings**

Ms. Courtney contends the ALJ erred at step two by failing to find attention deficit hyperactive disorder ("ADHD"), schizoaffective disorder, major depression, and defiant and

---
[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

oppositional disorder were severe impairments. Dkt. 11 at 12. Ms. Courtney had a step two burden to show each of these conditions was a medically determinable impairment, and the impairment was severe for at least 12 continuous months. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

The ALJ found, at step two, "the longitudinal record supports finding that the diagnosis of learning disorder, post traumatic stress disorder with elements of anxiety and depression, personality disorder, and polysubstance abuse better addresses the claimant's mental symptoms." Tr. 13. Ms. Courtney contends the finding is erroneous arguing the ALJ disregarded the opinions of Douglas Uhl, Psy.D., and Anselm Parlatore, M.D., "the only mental health specialists who actually examined Plaintiff." Dkt. 11 at 12.

Ms. Courtney argues Dr. Uhl diagnosed her with ADHD, schizoaffective disorder, major depression, and defiant and oppositional disorder. The record shows Dr. Uhl examined Ms. Courtney six times for the Department of Social and Health Services ("DSHS"). In his first evaluation of February 21, 2005, the doctor diagnosed Ms. Courtney with bipolar disorder, ADHD, and amphetamine dependence. Tr. 359. Six months later Dr. Uhl gave a different diagnosis—on August 16, 2005, he diagnosed Ms. Courtney with major depression and amphetamine dependence. Tr. 355. The doctor listed as possible diagnoses that needed to be ruled out bipolar disorder and ADHD. *Id.*

In his third examination, dated February 16, 2006, Dr. Uhl diagnosed Ms. Courtney with PTSD and amphetamine dependence and listed as possible diagnoses that needed to be ruled out bipolar disorder, ADHD, and major depression. Tr. 346. On August 14, 2006, Dr. Uhl performed his fourth examination and diagnosed Ms. Courtney with PTSD and listed as possible diagnoses that needed to be ruled out delusional disorder and major depression. Tr. 337.

REPORT AND RECOMMENDATION - 3

In his fifth examination, Dr. Uhl diagnosed Ms. Courtney with PTSD, schizoaffective disorder, and major depression.  Tr. 326.  And in his final examination, performed on June 30, 2011, Dr. Uhl diagnosed Ms. Courtney with PTSD, schizoaffective disorder, polysubstance dependence, and personality disorder.  Tr. 472.

Based, on this record, the ALJ did not err in failing to find ADHD, schizoaffective disorder, major depression, and defiant and oppositional disorder were severe impairments at step two.  Dr. Uhl diagnosed Ms. Courtney with ADHD in his first examination.  But in his next two diagnoses, Dr. Uhl opined Ms. Courtney had "possible" ADHD, and in his final three diagnoses, ADHD was dropped altogether.  Similarly Dr. Uhl diagnosed schizoaffective disorder and major depression in three of his examinations but did not diagnose Ms. Courtney with these disorders in the other three examinations.  Hence, the longitudinal record supports the ALJ's decision not to discuss ADHD as a severe impairment, and not to find ADHD, schizoaffective disorder and major depression to be severe impairments. The ALJ's step two findings are also supported by Dr. Parlatore's examination in which he diagnosed Ms. Courtney with learning disorder, PTSD, cocaine abuse in remission, and personality disorder, and not ADHD, schizoaffective disorder or major depression.  Tr. 278.  Accordingly, the Court affirms the ALJ's step two findings.

**B.**     **The ALJ's assessment of Ms. Courtney's residual functional capacity**

Ms. Courtney contends the ALJ's assessment of her RFC "fails to include all of the limitations in the medical opinion evidence the ALJ purported to credit." Dkt. 11 at 4.  In specific, Ms. Courtney argues the ALJ gave great weight to the opinions of Vincent Gollogly, Ph.D., Ione S. Adams, M.D., and Ronald S. Goldberg, M.D., but failed to include limitations these doctors found in assessing her RFC.  She also argues the ALJ erred in rejecting the

opinions of Anselm Parlatore, M.D., and Douglas Uhl, Psy.D., as to her mental limitations.

### 1. Dr. Gollogly

Dr. Gollogly opined Ms. Courtney's mental functioning was limited in that she "could also work appropriately with a supervisor and 1 or 2 co-workers." Tr. 18. Although the ALJ gave this opinion great weight, the ALJ found Ms. Courtney had the RFC to "respond to supervision, co-workers and deal with changes all within a stable work environment that is not dealing with the general public." *Id.* Ms. Courtney argues the ALJ erred in three ways. First, as Ms. Courtney correctly points out, the ALJ's RFC findings failed to include Dr. Gollogly's limitation that she could work appropriately with "a supervisor and 1 or 2 coworkers." While an ALJ may interpret and reject a doctor's opinion, an ALJ may not do so without providing a valid reason. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Here, the ALJ gave no explanation for not incorporating the limitation found by Dr. Gollogly and accordingly erred in assessing Ms. Courtney's RFC.

Next, Ms. Courtney argues the ALJ erred in failing to incorporate Dr. Gollogly's opinion that she was moderately limited in her ability to maintain an ordinary routine without special supervision. Dkt. 11 at 6. The ALJ found Ms. Courtney had the "average or moderate ability to perform sustained work activities in the ordinary work setting," and thus did not err in failing to incorporate Dr. Gollogly's opinion that Ms. Courtney had moderate limitations to the ability to maintain routine. Tr. 16. However, this finding is based on the premise Ms. Courtney has the ability to work in an "ordinary work setting," which as noted above, erroneously fails to incorporate Dr. Gollogy's opinion that Ms. Courtney was limited to working with a supervisor and one to two co-workers.

And finally, Ms. Courtney argues the ALJ erred in failing to incorporate Dr. Gollogly's

REPORT AND RECOMMENDATION - 5

1  opinion that Ms. Courtney "must avoid contact with the general public altogether." Dkt. 11 at 6.

2  This argument overstates Dr. Gollogly's opinion. Dr. Gollogly did not opine Ms. Courtney must

3  avoid public contact altogether; instead he opined she "should avoid public contact." Tr. 282.

4  The ALJ adequately incorporated this opinion by finding Ms. Courtney cannot be employed in a

5  job that deals with the general public but could have incidental contact with the public so long as

6  the public is not a part of her "work process." Tr. 16. This is consistent with Dr. Gollogly's

7  opinion that while Ms. Courtney should avoid public contact (Tr. 282), she is not significantly

8  limited in her ability to travel in unfamiliar places or use public transportation. Tr. 280. The

9  latter finding supports the ALJ's finding that Ms. Courtney has the capacity to have incidental

10  contact with the public. Accordingly, the ALJ did not erred in addressing Dr. Gollogly's

11  opinions about Ms. Courtney's limitations as to public contact.

12       In sum, the ALJ erred in failing to incorporate two of the three limitations identified by

13  Ms. Courtney. This error was not harmless because by failing to include the limitations found by

14  Dr. Gollogly, the ALJ failed to account for all of Ms. Courtney's limitations in assessing her

15  residual functional capacity.

16       *2.     Dr. Adams*

17       The ALJ gave "significant weight" to Dr. Adams's opinion that Ms. Courtney could

18  perform sedentary work, finding it consistent with the overall evidence of record. Tr. 18.

19  However, without explanation, the ALJ failed to discuss or include other limitations Dr. Adams

20  found. Dr. Adams opined Ms. Courtney was limited to sedentary work. The examination form

21  he used defined sedentary as "the ability to lift 10 pounds maximum and frequently lift and/or

22  carry such articles as files and small tools." Tr. 316. In contrast, while the ALJ found Ms.

23  Courtney had the RFC to perform sedentary work, the ALJ found she could "occasionally

1  lift/carry 20 pounds and frequently lift/carry 10 pounds," which is consistent with light work.
2  20 C.F.R. § 404.1567(b).  The ALJ's finding that Ms. Courtney has the RFC to lift 20 pounds is
3  thus inconsistent with the Social Security regulations which define sedentary as "work involves
4  lifting no more than 10 pounds at a time."  20 C.F.R. § 404.1567(a).  This error was harmless,
5  however, because the ALJ ultimately found Ms. Courtney was performing sedentary jobs,
6  including jobs the vocational expert identified as sedentary work such as semi-conductor bonder
7  (DOT 726.685-066, sedentary).  Tr. 20.

8           Dr. Adams also indicated Ms. Courtney was "unable to stand > 30 min. or walk > ¾
9  mile."  Tr. 315.  Without explanation, the ALJ failed to incorporate this limitation in his
10 assessment of Ms. Courtney's RFC and instead found Ms. Courtney could "stand or walk for 2
11 hours in an 8 hour day."  Tr. 15.  In defense of the ALJ's decision, the Commissioner contends
12 the ALJ gave great weight to Dr. Ronald Goldberg's M.D., opinion that Ms. Courtney had the
13 capacity to stand 2 hours in an 8 hour day, and implies that in doing so, the ALJ rejected Dr.
14 Adams' opinion and adopted Dr. Goldberg's opinion.  Dkt. 16 at 15-16.

15          However, the ALJ's decision provides nothing to support this implication. Rather, the
16 ALJ gave great weight to both doctors' opinions without distinguishing them or finding them
17 inconsistent.  Further, even if the Commissioner is correct that the ALJ weighed and favored Dr.
18 Goldberg's opinion over Dr. Adams' opinion, the ALJ erred by failing to explain the basis for
19 so doing.  In rejecting a doctor's opinion in favor of another doctor's opinion, an ALJ should set
20 out a detailed and thorough summary of the facts and conflicting evidence, and provide his or
21 her interpretation of the facts and evidence, and make findings.  *Magallanes v. Bowen*, 881 F.2d
22 747, 751 (9th Cir. 1989).  As this did not occur, the ALJ erred.  This error is not harmless
23 because it involves a limitation that if accepted would render Ms. Courtney capable of

REPORT AND RECOMMENDATION - 7

performing less than sedentary work, rather than sedentary work as found by the ALJ.

### 3. Dr. Goldberg

The ALJ gave significant weight to Dr. Goldberg's opinion that Ms. Courtney could perform work at the sedentary level "with some postural and environmental limitations." Tr. 18. The ALJ incorporated the postural limitations but failed to discuss or incorporate the environmental limitations the doctor found—Avoiding "hazards, machinery, heights, etc." Tr. 301. Ms. Courtney contends the ALJ erred by failing to include, without comment, the environmental limitations found by Dr. Goldberg. Dkt. 11 at 8-9. The Commissioner presents no argument to the contrary. Unless there are grounds to reject a purported limitation, an ALJ must include in his or her assessment of a claimant's residual functional capacity, all limitations,[3] and include all limitations in hypothetical questions that an ALJ poses to a vocational expert. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). As this did not occur, the ALJ erred and the error was not harmless.

### 4. Dr. Parlatore

Dr. Parlatore examined Ms. Courtney once on September 29, 2009, and opined she had marked impairments in her intellectual functioning and in her ability to deal with stress, focus, concentrate, persist, carry out tasks in a timely manner and interact with others. Tr. 19. The ALJ gave little weight to the doctor's opinions because "the claimant failed to disclose to Dr. Parlatore that she had relapsed on methamphetamine in June 2008 and was actively using them during the time period surrounding this examination." *Id.* The extent to which a doctor is familiar with other information in a claimant's case record is a relevant factor in deciding the weight to give to a medical opinion. 20 C.F.R. § 404.1527(d)(6). Accordingly, the ALJ's

---

[3] *See* 20 C.F.R. § 416.945(a).

1  finding that Dr. Parlatore was unaware of Ms. Courtney's full diagnostic picture, which included
2  drug abuse, was a specific and legitimate reason to discount the doctor's opinions.

3  This finding was also supported by substantial evidence. Ms. Courtney told Dr.
4  Parlatore, "I think I did a lot of drugs for a little while." Tr. 275. The only drugs she disclosed
5  to Dr. Parlatore was cocaine and the doctor's report gives the impression that her last drug use
6  was many years prior to the doctor's examination. *Id.* The record, however, paints a very
7  different picture of Ms. Courtney's drug use. The record shows that in June 2008, Ms. Courtney
8  reported to her doctors at the Interfaith Community Health Center that she had relapsed and had
9  used methamphetamine. Tr. 272. In May 2009, Ms. Courtney reported to doctors at St. Joseph
10 Hospital that she was "currently smoking methamphetamine." Tr. 255. In March 2010, she told
11 her doctors at the Interfaith Community Health Center that she "last used meth 6 months ago,"
12 which would be approximately the time Dr. Parlatore examined her. Tr. 403. And in March
13 2010, her doctors at the Interfaith Community Health Center indicated under "medical history"
14 that she was dependent on methamphetamine and that her use was "continuous." Tr. 373. Given
15 the record, the ALJ did not err in discounting Dr. Parlatore's opinions on the grounds that the
16 doctor "did not have all the pertinent facts" regarding Ms. Courtney's drug abuse.

17  *5.   Dr. Uhl*

18  Dr. Uhl performed several DSHS psychological evaluations and opined Ms. Courtney
19 had moderate social and cognitive limitations and several marked social limitations. The ALJ
20 discounted Dr. Uhl's opinions on the grounds that Ms. Courtney "did not inform Dr. Uhl of her
21 methamphetamine relapse and the rest of Dr. Uhl's opinions . . . appear to be based primarily on
22 the claimant's subjective reports" which the ALJ found not credible. Tr. 18. Substantial
23 evidence does not support this finding.

REPORT AND RECOMMENDATION - 9

It is true Ms. Courtney either did not disclose or minimized her drug abuse during some of Dr. Uhl's examinations.  However, Dr. Uhl's final examination dispels any notion that he was unaware of her drug use, or its impact on her functioning.  In the final examination, Dr. Uhl diagnosed Ms. Courtney with PTSD, Schizoaffective disorder, polysubstance dependence, and personality disorder, and opined Ms. Courtney had marked to severe cognitive and functional impairments.  Tr. 472-73.  Dr. Uhl noted that Ms. Courtney last used drugs 5 days before his examination, that she has "continued problems with drug/alcohol abuse" and that "drugs could be responsible for each one of her symptoms.  She seems to be a chronic user/abuse and may never be able to maintain abstinence."  Tr. 473.  Hence, the record shows Dr. Uhl rendered an opinion with full awareness of Ms. Courtney's serious substance abuse problems.

The record also does not support the ALJ's findings that Dr. Uhl's opinions were based primarily on Ms. Courtney's subjective reports.  Dr. Uhl examined Ms. Courtney six times.  In three of his examinations, he administered standardized mental status exams and based his opinions regarding her functional limitations, often referring to the results of those exams.  *See e.g.*, Tr. 327, 338, Tr. 347, 360.  Additionally in Dr. Uhl's final examination, he did not simply rely on Ms. Courtney's statements in reaching his opinions.  Rather, he opined that drug abuse could be the cause of each of Ms. Courtney's symptoms.  This is not an opinion that was based on what Ms. Courtney told the doctor.  In fact, if true, it tends to undermine Ms. Courtney's claim that her mental impairments are disabling.

Accordingly, the ALJ erred in rejecting the opinions of Dr. Uhl.  This error was not harmless, given Dr. Uhl's opinion that Ms. Courtney had marked to severe cognitive and functional limitations, which were not fully accounted for in the ALJ's residual functional assessment.

**C.      The ALJ's assessment of Ms. Courtney's credibility**

Ms. Courtney contends the ALJ erred in finding her testimony about the severity of her symptoms not fully credible.  The ALJ's credibility determination rested in large part on his assessment of the medical evidence.  The credibility of Ms. Courtney's testimony should thus be re-examined on remand, along with the ALJ's evaluation of aspects of the medical evidence regarding Ms. Courtney's exertional and non-exertional limitations.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision as to the step two findings be affirmed and that the matter be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four.

On remand, the ALJ should reassess the opinions of Drs. Gollogly, Adams, Goldberg, and Uhl, and the testimony of Ms. Courtney, develop the record as needed, reassess Ms. Courtney's residual functional capacity as necessary, and proceed to steps three, four, and five as appropriate.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **November 19, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **November 23, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed

///

///

///

1  twelve pages.  The failure to timely object may affect the right to appeal.

2  DATED this 5th day of November, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12